IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HERITAGE-CRYSTAL CLEAN, LLC,<br>2175 Point Boulevard<br>Suite 375<br>Elgin, Illinois 60123-9211<br><br>            **PLAINTIFF,**<br><br>    v.<br><br>ESSROC CEMENT CORPORATION,<br>3938 Easton Nazareth Pike<br>Nazareth, PA 18064<br><br>            **DEFENDANT.** | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, HERITAGE-CRYSTAL CLEAN, LLC ("Crystal Clean" or "HCC"), by its attorneys, Fox Rothschild LLP, for its complaint against Defendant, ESSROC CEMENT CORPORATION ("Essroc"), alleges as follows:

### Nature of Action

1. This is a suit for breach of contract and negligence against Essroc Cement Corporation arising from Essroc's tendering of PCB-contaminated used oil to Heritage-Crystal Clean, LLC. Essroc's actions violated express certifications and warranties that Essroc made in its contract with Crystal Clean and breached Essroc's duties to manage the PCB oil in accordance with the standard of care and the environmental laws. As a result of Essroc's breach of contract and breach of duty, Crystal Clean has incurred approximately $200,000 in decontamination, disposal, transportation, laboratory, and management costs.

## Jurisdiction

2. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy exceeds $75,000.

3. Essroc is a Pennsylvania corporation with its principal place of business in Nazareth, Pennsylvania. Heritage-Crystal Clean, LLC is an Indiana limited liability company with one member, Heritage-Crystal Clean, Inc. Heritage-Crystal Clean, Inc. is a Delaware corporation with its principal place of business in Elgin, Illinois. Therefore, the parties are citizens of different states.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because Essroc resides in this district and substantial part of the events giving rise to the claim occurred in this district.

## The Parties

5. The Plaintiff, Heritage-Crystal Clean, LLC, provides parts cleaning, containerized waste management, and used oil collection services to a broad range of customers from its approximately 75 transfer facilities across the country. It also operates a used oil re-refinery and used oil recycling unit Indianapolis, Indiana.

6. The Defendant, Essroc Cement Corporation, is a manufacturer of cement and ready mix concrete serving the cement, concrete and construction industries.

## Polychlorinated Biphenyls

7. Polychlorinated biphenyls ("PCBs") are a group of man-made organic chemicals consisting of carbon, hydrogen and chlorine atoms. PCBs were manufactured in the U.S. from 1929 until 1979, when further manufacturing was banned.

8. Because of their non-flammability, chemical stability, high boiling point, and electrical insulating properties, PCBs were used in numerous industrial and

2

commercial applications, including electrical, heat transfer and hydraulic equipment. They were also used as plasticizers in paints, plastics, and rubber products; in pigments, dyes, and carbonless copy paper; as well as in other industrial applications.

9. PCBs are often classified by "Aroclors." Aroclors are mixtures of specific PCB congeners that were manufactured to have different physical properties. These properties are determined largely by the percentage of chlorine in the overall mixture. Different Aroclors are designated by a 4-digit number. The first two digits represent the number of carbon atoms (12) and the second two digits indicate the percentage of chlorine in the mixture. Aroclor 1260, for example, contains 60% chlorine by mass. This case concerns Aroclor 1260.

10. Once released into the environment, whether as a result of the manufacturing process, improper disposal, or spills, PCBs do not readily break down and may remain in the environment for long periods of time.

11. The federal government has found that PCBs cause a wide variety of health effects, including cancer, and bio-accumulate in the environment.

12. For this reason, the federal government, in 1979, not only banned the manufacture of PCBs, but also imposed a stringent set of management controls upon the storage, disposal, and clean-up of PCBs through regulations issued under the Toxic Substances Control Act. 15 U.S.C. §§ 2601 *et seq.* The PCB regulations are found at 40 C.F.R. Part 761.

13. PCBs are also regulated under the used oil regulations issued pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.* The used oil regulations are found at 40 C.F.R. Part 279.

14. TSCA regulates PCBs at concentrations of 50 ppm or greater. *See, e.g.,* 40 C.F.R. § 761.20, § 761.60. Used oil containing PCBs at concentrations of 50 ppm or greater must be managed as a PCB material under TSCA and not as a used oil under RCRA. 40 C.F.R. § 279.10(i).

15. With narrow exceptions, PCB liquids with concentrations of 50 ppm or greater must be incinerated in a TSCA-approved incinerator. 40 C.F.R. § 761.60(a). TSCA bars any person from diluting a PCB material, or processing liquid PCBs into a non-liquid form, to avoid an incineration requirement. 40 C.F.R. §§ 761.1(b)(5); 761.50(a)(2). Any person removing PCBs from use must dispose of them in accordance with Section 761.60(a). Persons storing PCB materials must do in accordance with Section 761.65 and properly mark the containers as holding PCBs. *Id.* §§ 761.41-.45. Equipment (non-porous surfaces) contaminated with liquid PCBs must be cleaned to no more than 10 micrograms PCBs per 100 square centimeters. The decontamination standard for organic liquids and non-aqueous organic liquids is less than 2 ppm PCBs. 40 C.F.R. §§ 761.79(b)(2)&(3).

16. Among the factors the USEPA uses in setting a penalty for TSCA violations is the quantity of PCBs, the volume of material contaminated, the concentration of material, and the nature of the violation. *See* Polychlorinated Biphenyls (PCBs) Penalty Policy (USEPA 1990).

17. PCB liquids can cost up to $5.00 or more per gallon to incinerate. Crystal Clean pays generators for their used oil because of its value as a recyclable commodity.

## Facts

18. On or about July 21, 2012, Crystal Clean and Essroc entered into an Oil Collection Service Agreement. (Attached as Exhibit A).

4

19. Under the Service Agreement, Crystal Clean agreed to pick up used oil from Essroc's cement plant in Nazareth, Pennsylvania.

20. The Service Agreement contained the following Terms and Conditions relevant to this dispute:

> 6. Customer hereby certifies that (a) the material tendered to HCC shall meet its definition of "used oil" as defined at 40 C.F.R. 279.1, and shall meet the used oil specifications defined at 40 C.F.R. 279.11, and (b) **the material tendered to HCC as used oil shall not have been mixed with any materials regulated under the Toxic Substances Control Act (TSCA), including but not limited to polychlorinated bipheyls (PCBs).**
>
> \* \* \*
>
> Customer agrees to indemnify, and defend HCC, including its directors, officers, employees, contractors, and agents, from and against all claim, demands, actions, lawsuits, penalties, fines, damages, losses, expenses and other liabilities of whatever nature, including clean-up, investigation and monitoring costs, direct, incidental, special and consequential damages and lost profits (and reasonable attorney's and consultants' fees) arising out of or caused by (a) Customer's violation or alleged violation of any environmental law relating to the protection of human health and the environment,(including air, water, soil and natural resources) or the use, storage, handling, release or disposal of any hazardous substances (as defined at 42 U.S.C. § 9601(14)), including without limitation, RCRA, 42 U.S.C. § § 6901 *et seq,* Superfund, 42 US.C. § § § 9601 *et seq,* and their state counterparts; (b) Customer's breach of any certification or other term of this Agreement; (c) Customers negligent acts or omissions; or (d) the commingling of a third party's materials with Customer's materials which are in breach of this Agreement. Without limitation, this indemnity shall include and HCC shall bill Customer for all emergency and other remedial services performed by HCC or its contractor, the rates for which are provide at HCC's website www.crystal-clean.comlcenaing_ratesheet.

(Exhibit A) (emphasis added).

5

21. On August 10, 2012, Essroc completed a Heritage-Crystal Clean Wastestream Survey Form. (Exhibit B). The purpose of this form was for Essroc to describe the type of materials it would be tendering to Crystal Clean for management.

22. Essroc described the material as "non DOT regulated used oil" resulting from a change out of hydraulic oil from conveyor equipment.

23. In Box 16 of the form, Essroc marked "No" in answer to the question of whether the waste contained "any PCBs." Essroc further indicated that the waste met the definition of used oil under 40 CFR 279, that it had not been mixed with a hazardous waste, and that it contained less than 1000 ppm total halogens. (Exhibit B, p. 2). Essroc further indicated that the waste did not require "any special handling." (Exhibit B, p. 2).

24. In the Certification section of the Wastestream Survey Form, Essroc represented and warranted that "all Waste Materials to be transferred to HCC hereunder will conform to the description of such Waste Materials contained in the Wastestream Survey or Approval for Waste Services which bears the Wastestream Number associated with that particular stream of Waste Materials."

25. As part of its contractual arrangement with Crystal Clean, Essroc also executed a Generator Certification providing in part that:

> Customer represents, warrants and certifies that the waste materials described in this Agreement for these services meets the definition of used oil in 40 CFR 279 ("Used Oil" means any oil that has been refined from crude oil, or any synthetic oil, that has been used and as a result for such use is contaminated by physical or chemical impurities") and has **not been mixed with other regulated materials, including but not limited to polychlorinated biphenyls (PCBs), other materials regulated under TSCA,** or hazardous waste, and recognizes that HCC is relying on this Certification to properly manage these waste materials, and in the event that this Certification is untrue, Customer accepts complete

6

responsibility for all costs related to the proper management and disposal of the waste materials and any commingled materials.

(Exhibit C) (emphasis added).

26. On August 29, 2012, Radu Lungu, Essroc's Plant Engineer, signed the Generator Certification on behalf of Essroc. (Exhibit C).

27. On or about August 31, 2012, Crystal Clean made a pick-up of used oil from Essroc's Nazareth plant. This pick-up entailed pumping used oil from Essroc's designated drums into a Crystal Clean route truck.

28. In accordance with Crystal Clean's standard practice, the Crystal Clean driver took a sample from each of the Essroc containers. Because Crystal Clean necessarily commingles multiple customer loads into a route truck and then into a railcar, the customer sample allows Crystal Clean, in the event it later finds contamination in the truck or railcar, to trace the source of the contamination back to a specific customer load.

29. The Crystal Clean route truck, containing the Essroc used oil, was then transferred to a railcar at Crystal Clean's Fairless Hills, Pennsylvania for shipment to its Indianapolis used oil re-refinery.

30. On September 26, 2012, the railcar, containing the Essroc used oil along with other customer loads, arrived at Crystal Clean's Indianapolis used oil re-refinery.

31. As part of its standard protocol, Crystal Clean tests the contents of each railcar for PCBs (and other contaminants) prior to off-loading the shipment into the used oil re-refinery tank system.

32. On September 27, 2012, Crystal Clean received the test results for the railcar and found that it contained 120 ppm of PCB Aroclor 1260.

33.     Crystal Clean immediately put a hold on the railcar and went through the lengthy process of testing each of the each of the customer loads that made up the shipment.

34.     On October 10, 2012, Crystal Clean received the data showing that Essroc retained sample "D" contained 2700 ppm of PCB Aroclor 1260, the same Aroclor found in the railcar.

35.     Following the detection of PCBs in the Essroc sample, Crystal Clean promptly put Essroc on notice of the PCB-contaminated load. After the exchange of further communications regarding the PCB-contaminated load, Crystal Clean presented Essroc with an invoice setting out the significant costs, amounting to $195,958.01, that Crystal Clean was forced to incur to remediate the harm caused by Essroc's contaminated oil. These costs include those Crystal Clean incurred for sampling, testing, decontamination of the transport vehicles, and the transportation and off-site destruction of the PCB-contaminated oil.

36.     Since Crystal Clean first notified Essroc of the PCB-contaminated oil, Essroc has persistently avoided taking responsibility for the contamination and ignored Crystal Clean's requests for reimbursement in accordance with the promises Essroc made in the Service Agreement and the Generator Certification.

## COUNT ONE - BREACH OF CONTRACT

37.     Crystal Clean incorporates Paragraphs 1 through 36 as if specifically set forth herein.

38.     On July 21, 2012, Crystal Clean and Essroc entered into a Service Agreement in which Essroc certified, among other things, that the used oil it was

8

tendering to Crystal Clean would not be mixed with any materials regulated under the Toxic Substances Control Act, including PCBs.

39. In the Service Agreement, Essroc also agreed "to indemnify and defend Crystal Clean from and against all claims, demands, actions, lawsuits, penalties, fines, damages, losses, expenses and other liabilities of whatever nature, including clean-up, investigation and monitoring costs, direct, incidental, special and consequential damages and lost profits (and reasonable attorney's and consultants' fees) arising out of or caused by (a) Customer's violation or alleged violation of any environmental law relating to the protection of human health and the environment, (including air, water, soil and natural resources) or the use, storage, handling, release or disposal of any hazardous substances (b) Customer's breach of any certification or other term of this Agreement; (c) Customers negligent acts or omissions; or (d) the commingling of a third party's materials with Customer's materials which are in breach of this Agreement."

40. In the Generator Certification, Essroc also represented, warranted, and certified that the waste materials it tendered to Crystal Clean would meet the definition of "used oil" in 40 C.F.R. Part 279, and would not be mixed with PCBs.

41. Essroc further acknowledged and understood, as set forth in the Generator Certification, that Crystal Clean was relying upon the accuracy of Essroc's certifications and if any certification proved to be untrue, Essroc agreed to accept "complete responsibility for all costs related to the proper management and disposal of the waste materials and any commingled materials." (Exhibit C).

9

42. In reliance upon Essroc's certifications, warranties, promises, and representations, Crystal Clean picked up Essroc's used oil from its Nazareth facility on August 31, 2012, and paid Essroc for the recyclable value of the oil.

43. Essroc breached the promises it made in the Wastestream Survey Form, the Service Agreement, and the Generator Certification because:

   a. The used oil actually tendered by Essroc contained PCBs;

   b. The PCB-contaminated oil was not regulated as a used oil under 40 C.F.R. Part 279; and

   c. Essroc failed to comply with numerous regulatory requirements in managing the PCB-contaminated oil, including, but not limited to, (i) failure to properly mark the containers in accordance with the TSCA regulations; (ii) failure to tender the PCB oil to a properly permitted transporter for disposal at a TSCA-authorized facility; (iii) failure to manage the PCB oil under TSCA rather than the RCRA used oil rules; and (iv) failure to properly characterize the PCB oil for proper management.

44. As a result of Essroc's breach of the contract documents, Crystal Clean has incurred damages in the amount of $195,948.01 (not including attorney's fees) arising from the following remedial activities:

   a. Decontaminating equipment and transport vehicles that came in contact with the PCB oil;

   b. Sampling and testing the used oil contaminated by Essroc's PCB oil;

   c. Destroying the PCB-contaminated oil;

    d. Inventory loss;

    e. Truck downtime;

    f. Management oversight; and

    g. Other costs to be proved at trial

## COUNT TWO - NEGLIGENCE

45. Crystal Clean incorporates Paragraphs 1 through 44 as if specifically set forth herein.

46. At all relevant times, Essroc had a duty to exercise reasonable care in the characterization and tendering of used oil to Crystal Clean. Specifically, Essroc had the duty to:

    a. Properly characterize its waste materials;

    b. Properly complete all paperwork it submitted to Crystal Clean in which Essroc certified that its used oil did not contain PCBs;

    c. Ensure that its used oil did not contain PCBs; and

    d. Comply with the regulatory standards for managing PCBs under TSCA and RCRA, including those pertaining to labeling, storage, characterization, transportation, and disposal.

47. Essroc breached one or more of its duties of reasonable care when it tendered used oil containing PCBs to Crystal Clean.

48. As a direct and proximate cause of Essroc's breaches of duty, Crystal Clean has sustained damage to other property that it owns or leases and incurred significant costs to remedy the PCB oil, including the materials it came into contact with.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Heritage-Crystal Clean, LLC, respectfully asks the Court to:

A. Enter judgment in favor of Crystal Clean and against Essroc Cement Corporation, requiring Essroc to pay Crystal Clean's costs and attorney's fees it incurred as a result of Essroc's tendering of PCB-contaminated oil to Crystal Clean.

B. Award Crystal Clean compensatory damages.

C. Award Crystal Clean interest, attorney's fees, consultant's fees and costs of litigation; and

D. Award such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff, Heritage-Crystal Clean, LLC demands a trial by jury on all issues so triable.

**DATED:  October 6, 2014**                                   Respectfully submitted,

FOX ROTHSCHILD LLP

By: *[signature: Christine Soares]*

Sharon Oras Morgan, Esquire
Attorney ID No. 60068
Christine Soares, Esquire
Attorney ID No. 203497
2000 Market Street, 20th Floor
Philadelphia, PA  19103
Phone:  215.299.2000
Fax:     215.299.2150
smorgan@foxrothschild.com
csoares@foxrothschild.com

*Attorneys for Plaintiff*
*Heritage-Crystal Clean, LLC*

# EXHIBIT A

**S/A #:** P062567



51BH8

## Crystal Clean
### Oil Collection
### Service Agreement

**CORPORATE OFFICES**
2175 Point Blvd., Suite 375
Elgin, IL 60123
(877) 938-7948
FED. TAX I.D. # 35-2063150

VISA, MASTERCARD AND AMEX ACCEPTED

Information for current Heritage-Crystal Clean, LLC (herein "HCC") Customers Only:

HCC Customer #: 139377   Original Service Agreement #: 250888   Placement: 030901
Service Request #: 210739   HCC Generator #: 150504   Emp. ID #

This Agreement is made this July day of 21, 20 12 by and between HCC and:

Name: Esso Exxon
Address: 3338 Easton Nazareth Hwy
City: Bethlehem  State: PA  Zip: 18064
Telephone #: 6107463748  Contact: Justin Grubb

Name:
Address:
City:   State:   Zip:
Telephone #:   Fax #:

State EPA ID#:   Fed EPA ID#:   FEIN#:   E-mail:

PLEASE SEE ADDITIONAL TERMS, CONDITIONS, AND CERTIFICATIONS ON THE REVERSE SIDE HEREOF AND/OR PROVIDED HEREWITH WHICH ARE PART OF THIS AGREEMENT.

Authorized Customer Representative Signature   HCC Representative Signature

| Product Code | Qty | Product Description | Svc Int | Unit Price | |
|---|---|---|---|---|---|
| 886 | 100 | Used Oil | 8 | .92 | 92.00 |

**DESTINATION:**
Phone Number:
Per: 
HCC Carrier   Date: 7-31-12

**CARRIER: HERITAGE-CRYSTAL CLEAN, LLC**   EPA ID#: ILR 000 190 862   PHONE NUMBER: (877) 938-7948

Chlor-D-Tect Results:
☐ Under 1000 - Pass   Proper Shipping Name: Non Dot/Non Regulated used oil   Total: 100   Units: 6
☐ Over 1000 - Failed

| | Products | $ |
|---|---|---|
| | Sales Tax | $ 92.03 |
| | TOTAL | $ |
| | Pmnt Made/Rec'd | $ |

___ VISA ___ AMEX ___ MasterCard  Exp. Date ___/___  Check (Ck #_____)  ___ Cash  ___ On Acct  → This Svc Only ___
Card Holder Name: _____  Card #: _____  P.O. #: _____  Every Svc ___
Used Oil Paid by Credit Card

2011 REV 11/30   **THIS IS NOT AN INVOICE**
OFFICE   FORM NO. 2011-10

1. Customer grants HCC, its employees and agents reasonable access to Customer's premises to perform the services under this Agreement and to perform such on site and other testing as it may deem appropriate; provided that HCC shall, however, have no responsibility for testing any materials and/or product and shall have the option of returning any materials or products, which in the sole discretion of HCC do not conform to the terms and conditions and certifications in this Agreement. HCC shall have the right, in its sole discretion, to resell, manage, treat, handle and/or dispose of any materials or products it takes possession of.

2. Customer agrees to indemnify, and defend HCC, including its directors, officers, employees, contractors, and agents, from and against all claims, demands, actions, lawsuits, penalties, fines, damages, losses, expenses and other liabilities of whatever nature, including clean-up, investigation, and monitoring costs, indirect, incidental, special, and consequential damages and lost profits (and reasonable attorney's and consultants' fees) arising out of or caused by (a) Customer's violation or alleged violation of any environmental law relating to the protection of human health or the environment (including air, water, soil and natural resources) or the use, storage, handling, release or disposal of any hazardous substances (as defined at 42 U.S.C. § 9601(14)), including without limitation, RCRA, 42 U.S.C. §§ 6901 et seq. Superfund, 42 U.S.C. §§ 9601 et seq., and their state counterparts; (b) Customer's breach of any certification or other term of this Agreement; (c) Customer's negligent acts or omissions; or (d) the commingling of a third party's materials with Customer's materials which are in breach of this Agreement. Without limitation, this indemnity shall include and HCC shall bill Customer for all emergency and other remedial services performed by HCC or its contractors, the rates for which are provided at HCC's website www.crystal-clean.com/clearing_ratesheet. Notwithstanding this indemnity, HCC reserves the right to pursue any and all additional remedies available under federal, state and local laws relating to HCC's services rendered on behalf of Customer hereunder.

3. IN NO EVENT SHALL HCC BE RESPONSIBLE TO THE CUSTOMER FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING WITHOUT LIMITATION LOST PROFITS) EVEN IF A PARTY HERETO HAS BEEN PREVIOUSLY ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

4. Any work order is deemed part of this Service Agreement. None of the covenants, terms or conditions of this Agreement, to be kept and performed by either party, shall in any manner be altered, waived, modified, changed or abandoned, except by written instrument duly signed and delivered by the other party. If any term or provision of this Agreement shall to any extent be held invalid or unenforceable, then such provisions shall be deemed modified to the extent and in the manner necessary to render it valid and enforceable, or if the provision cannot be so modified it shall be deemed stricken from this Agreement and the remaining terms and provisions of this Agreement shall not be affected thereby. Each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law. The party signing this Agreement on behalf of the Customer is duly authorized. This Agreement constitutes the valid and legally obligation of the Customer, enforceable in accordance with its terms and does not violate any other agreement, oral or written, of the Customer. Customer represents and warrants that it is and will remain in full compliance with all requirements of applicable laws, regulations and orders relating to the waste materials specified herein. Customer has not been advised or encouraged by HCC to breach or fail to fulfill any of its contracts or obligations.

5. HCC shall provide the services described in the reverse side herein, subject to the other terms and conditions hereof. The term of this Agreement shall be for a period of one (1) year from the date hereof, which period shall be automatically extended for periods of one (1) year from the date of each service hereunder; subject to (a) written notice of termination by Customer which would be effective as of the end of the then current one (1) year period or (b) termination by HCC at any time in the event of Customer's breach of this Agreement. Unit price is subject to change by HCC at the time of each service, in its sole discretion, based on crude oil market pricing.

6. Customer hereby certifies that (a) the material tendered to HCC shall meet the definition of "used oil" as defined at 40 CFR 279.1, and shall meet the "used oil specifications" defined at 40 CFR 279.11, and (b) the material tendered to HCC as used oil shall not have been mixed with any materials regulated under the Toxic Substances Control Act (TSCA), including but not limited to polychlorinated biphenyls (PCBs). HCC reserves the right to account for bottoms, sediment, and water when determining quality and quantity of used oil collected, which determination shall govern said issues.

7. In the event Customer receives a good faith (written) offer for used oil collection services from a third party ("Third Party Offer") and as a result thereof wishes to terminate this Agreement in accordance with its terms, Customer shall notify HCC of the Third Party Offer and its terms ("Notice") and HCC shall have 60 days from receipt of the Notice to match the terms of the Third Party Offer, in which case this Agreement shall remain in full force and effect and HCC shall continue to provide services hereunder in accordance with the Third Party Offer.

# EXHIBIT B

# Heritage-Crystal Clean
## WASTESTREAM SURVEY FORM
email: cc_waste_approvals

**150504-3**

SR 200734

| | |
|---|---|
| CCMS # | 150504 |
| SA # | 365042 |

**HCC Location:** PHILADELPHIA    **HCC Representative:** JOHN SWEENEY

### 1. GENERATOR INFORMATION:
- **Generator:** ESSROC
- **Address:** 3938 EASTON NAZARETH PIKE
- **City, State, Zip:** NAZARETH, PA 18064
- **Phone:** 610 759 2222
- **Contact Name:** RADU LUNGU
- **E-Mail Address:**
- **USEPA ID #:** PAP000026104

### 2. PACKAGE: CONTAINER
- **Container Type:** DM
- **Container Size:** 16G
- **Loosepack:**
- **Size of Inner Containers:** 55 gal per Lep Veyer 8/28/12
- **Volume:** ☐ One time pickup
- **# drums per shipment:** 5
- **# shipments per year:** 2

### 3. GENERATOR STATUS: SQG

### 4. SIC / NAICS CODE: 3272
If 3312, do you perform Coke Oven Byproduct Recovery Operations? N
If 28__, 2911, 3312, or 4953, what is the Total Annual Benzene (TAB) in megagrams/year?

### 5. Common Name: OIL

### 6. Detailed Description of the Generating Process (required):
EQUIPMENT CHANGE-OUT    conveyor equipment

### 7. DOT Description:
Non Regulated (used oil)

### 8. CHEMICAL COMPOSITION:
Use specific chemical names, list all constituents present in wastestream.
List all UHCs and F001-F005/F039 constituents. Total composition must equal or exceed 100%

| Constituents | | Range | Units | UHC |
|---|---|---|---|---|
| OIL (hydraulic oil) | per cys 8/30/12 cs | 100% | | |
| OIL ANALYSIS PENDING - See Attached | | | | |

Generator grants HCC permission to assign UHC/COC for the LDR where appropriate based on analysis, MSDS, and other supporting information? YES

### 9. IDENTIFY WASTE CODES:
☐ Check if CESQG chooses not to use waste codes on shipping papers.
US EPA Waste Codes (all that apply):
State Waste Codes:

### 10. This waste is non-hazardous based on ☒ Lab Data ☐ MSDS ☐ Generator Knowledge    Include copy and check all that apply.

| 11. Color: BROWN | Appearance: OIL | Odor: PETRO |
|---|---|---|
| % Solids: | % Liquids: 100 | |

### 12. Physical Properties at 70 degrees F: LIQUID
SOLID  LIQUID  SLUDGE  POWDER  GAS
- If solid, are there free liquids? NA
- If no, will waste dump from the Drum? N
- Is the wastestream pumpable? YES
- Does the wastestream contain debris? NO

### 13. Chemical Properties:
- Flash Point (°F): >200    <73  73-140  141-200  >200
- Boiling Point (°F): >100    <100  >100
- Fuel Value (BTU/lb): >10K    <2000  2000-5000  5000-10,000  >10,000

pH or pH Range: 7.4

EHS form rev. date 4/11

AUG 29 2012

**14. Check ("X") all that apply. Marking any of these may require additional documentation or follow-up information.**

Crystal Clean

| | "X" |
|---|---|
| Air Reactive | |
| Asbestos | |
| Autoignitable/Pyrophoric | |
| Biological/Etiological/Medical | |
| Compressed Gas | |
| Dioxins | |
| Explosive | |
| Herbicides | |
| Insecticide/Pesticide | |
| Lab Pack | |
| Metal fines/powders | |
| **Type:** | |
| Oxidizer | |
| Pathogen/Infectious/Sanitary | |
| Polymerizable | |
| Radioactive | |
| Shock Sensitive | |
| Spontaneously Combustible | |
| Water Reactive | |
| Check if None Apply | X |

**15.**
Does the waste meet the definition of used oil? (per 40 CFR 279) YES
If yes, Used oil mixed with hazardous waste? N
Total Halogens (TX) concentration? ☒ <1000 PPM ☐ > 1000 PPM

**16.**
Does the waste contain any PCBs? (per 40 CFR 761) NO   per CC W/S 8/30/12 CH
If yes, PCB Concentration? ☐ <50 PPM ☐ >50 PPM
Greater than 50 PPM source?

**17.**
Does this material require any special handling? NO
If yes, explain:

**18.**
Subject to Subpart CC (per 40 CFR 265.1080-1091) NO
(waste is RCRA regulated with >500 ppm volatile organics)

**19.**
Do any exclusions/exemptions apply? NO
If yes, note the exclusions/exemptions:
- ☐ universal waste
- ☐ scrap metal
- ☐ commercial chemical fuel
- ☐ other

**20.**
Generated from electroplating process? NO
☐ check if cyanides are used in process

**21.**
Additional Comments:

**22. Check or List Attachments:** ☒ Lab data ☐ MSDS ☐ Other (list)

---

**16. Certification (sign and date certification)**

[Certification paragraphs 1–6, legal text regarding Wastestream Survey, Approval for Waste Services, transfer of title, HCC rights and obligations, RCRA/CERCLA liability, etc.]

I hereby certify that all information submitted hereto and attached contains true, accurate and complete descriptions of the Waste Materials. Any sample submitted for analysis is representative of the Waste Materials being offered for approval. All relevant information regarding known or suspected hazards in the possession of the generator has been disclosed. I have reviewed the physical facilities, administrative practices, and operational procedures (or have directed the completion of such a review) and based on this review do willingly make this certification. I authorize HCC to obtain a sample from any waste shipment for purposes of recertification. I will notify HCC if any generator status, waste description or any other information on this

PRINTED NAME: Ralph Talotta

SIGNATURE: [signed] Ralph Talotta

DATE: 5/30/12

COMPANY NAME: ESSROC

EHS form rev. date 4/11

# EXHIBIT C

| FOR OFFICE USE ONLY | | |
|---|---|---|
| HCC Generator #: 150504 |  Crystal Clean | HCC Service Agreement #: 365042 |

## HERITAGE-CRYSTAL CLEAN, LLC ("HCC")
## GENERATOR CERTIFICATION

ESSROC  
(Customer)

3938 EASTON NAZARETH HWY  
(Address)

NAZARETH     PA     18064  
(City)     (State)     (Zip Code)

Customer's EPA ID#: _____

Customer's State ID# (if applicable): _____

_____  
(Phone Number)

THIS FORM IS DEEMED PART OF THE ABOVE REFERENCED SERVICE AGREEMENT BETWEEN HERITAGE-CRYSTAL CLEAN, LLC AND THE IDENTIFIED CUSTOMER AND ALL TERMS AND CONDITIONS AND CERTIFICATIONS CONTAINED THEREIN ARE DEEMED A PART HEREOF.

### ALL SERVICES

**[X] Conditionally Exempt Small Quantity Generator (CESQG)** *(or state equivalent designation)*

The Customer hereby certifies that it qualifies as a Conditionally Exempt Small Quantity Generator by generating less than 100 kilograms (approximately 26 gallons) of characteristic (D codes), F, K, or U-listed hazardous waste during a calendar month, and less than one kilogram (approximately 2.2 pounds) of acute hazardous (P-listed) waste during a calendar month.

The Customer also certifies that no more than 1,000 kilograms of characteristic F, K, or U-listed hazardous waste and no more than one kilogram of acute hazardous waste was accumulated on-site at any one time during a calendar month. The Customer will inform HCC if more than 1,000 kilograms of characteristic F, K, or U-listed hazardous waste or more than one kilogram of acute hazardous waste is accumulated on-site at any one time during a calendar month.

**[ ] Generator Does NOT Qualify as Conditionally Exempt Small Quantity Generator**

The Customer hereby certifies that it qualifies as:

[ ] Small Quantity Generator (SQG)  
> 100 kg / 220 lbs. Per month and  
<1000 kg / 2200 lbs. Per month

or

[ ] Large Quantity Generator (LQG)  
> 1000 kg / 2200 lbs. Per month

RL  
(initials)  
**GENERATOR'S QUANTITY CERTIFICATION**

### PARTS CLEANER SERVICES

Customer represents, warrants and certifies as follows:

The Parts Cleaner fluids are generated in Customer's business operations without Customer adding any additives or other materials to the fluids and the fluids do not include any waste generated by any other person or any other business operation.

Customer understands that any Parts Cleaner fluids tendered to HCC for pickup have not been mixed with any materials regulated as hazardous waste under RCRA, or any polychlorinated bi-phenyls (PCBs) or other materials regulated under TSCA and all constituents present in such fluids are contaminants resulting from, and incidental to, normal use of the fluids as a degreaser or cleaner and any failure of these Certifications to be true and accurate may result in its fluids being classified as hazardous waste subject to federal and state laws and regulations.

**[ ] Non-Hazardous Parts Cleaner Program Certification**

Customer hereby certifies that it qualifies for HCC's Non-Hazardous Parts Cleaner Program and understands that the HCC degreasing/cleaning fluids picked up by HCC may be managed as a non-hazardous waste.

**[ ] Reuse Program Certification**

Customer hereby certifies that it qualifies for HCC's Reuse Program and understands that the HCC degreasing/cleaning fluids picked up by HCC may be utilized as an effective substitute for a commercial chemical product.

In the event of any breach of this Certification or if analytical results determine that the fluids do not qualify, said determination in HCC's sole discretion, HCC retains the right to disqualify the fluids from either the Non-Hazardous Parts Cleaner or Reuse Program in which case, Customer will be obligated to pay for testing, management and disposal of the fluids as hazardous waste. The person signing this Certification has reviewed the Customer's facilities, administrative practices and operational procedures (or has directed the completion of such review by others) and based upon such review, is willing to make this true, accurate and complete Certification.

_____  
(initials)  
**SOLVENT USE CERTIFICATION**

### USED OIL/VACUUM SERVICE

Customer acknowledges that HCC may, but is not required to, retain samples of materials, which may be used to confirm contaminants in said materials.

Customer represents, warrants and certifies that the waste materials described in this Agreement for these services meets the definition of used oil in 40 CFR 279 ("Used Oil" means any oil that has been refined from crude oil, or any synthetic oil, that has been used and as a result for such use is contaminated by physical or chemical impurities") and has not been mixed with other regulated materials, including but not limited to polychlorinated bi-phenyls (PCB's), other materials regulated under TSCA, or hazardous waste, and recognizes that HCC is relying on this Certification to properly manage these waste materials, and in the event that this Certification is untrue, Customer accepts complete responsibility for all costs related to the proper management and disposal of the waste materials and any commingled materials.

Customer acknowledges that the Used Oil will be co-mingled by HCC with used oil from third parties and that in the event the Used Oil is found to be non-conforming, either before or after said co-mingling, HCC may refuse to accept or revoke its prior acceptance of the Used Oil and Customer's indemnification in the Service Agreement shall apply to said non-conforming Used Oil and other used oil received from other parties which is affected thereby.

RL  
(initials)  
**USED OIL CERTIFICATION**

Customer hereby agrees to immediately notify HCC of any facts that would result in a change as to the truth, accuracy or completeness of the above Certification or any prior Certifications of the Customer. These initialed Certifications hereinabove supersede all prior Certifications as to the Certification subject matter, but no other Certifications. The signature below applies to all of the Certifications initialed hereinabove by the Customer.

RADU LUNGU _____ 8/29/2012  
(Printed Name of Responsible and Authorized Party)     (Signature)     (Date)

© 2005 Rev. 08/05 Printed in USA     OFFICE     FORM 20344